Filed 3/14/14  P. v. Larkin CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C068884 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF 07-4529) |
| v. | |
| CHRISTOPHER ALAN LARKIN, | |
| Defendant and Appellant. | |

Defendant Christopher Alan Larkin appeals from his convictions of one count each of forgery (Pen. Code, § 470, subd. (d)),[1] attempted grand theft (§§ 487, subd. (a); 664, subd. (a)), and attempted theft from an elder (§§ 368, subd. (d); 664, subd. (a)).  He contends the trial court erred by (1) admitting into evidence, and doing so without admonishing the jury, an allegedly prejudicial statement made by an investigating officer

---

[1]    Undesignated section references are to the Penal Code.

1

during a videotaped interview with defendant; and (2) miscalculating his presentence custody and conduct credits.

Defendant forfeited his evidentiary claim by not objecting specifically to the contested evidence, and his trial counsel did not commit ineffective assistance by failing to object. The trial court also did not abuse its discretion by not admonishing the jury. Except to modify the judgment to correct the award of presentence credits, we affirm.

FACTS

In February 2007, the home of 97-year-old Ida Landerman was burglarized and ransacked. The burglar took a box of checks.

In July 2007, Colin Stanbusky and Breanne Frady posted a drum set for sale on Craigslist for $1,200. On July 31, defendant met with Stanbusky, viewed the drum set, and offered to purchase it by check. He presented Stanbusky with one of Landerman's checks already written in the amount of $1,000. He claimed Landerman was his girlfriend's mother.

Stanbusky told defendant he would not release the drums until the check cleared. Defendant called an account information line and had Stanbusky listen to the recording of the account balance, which was $17,000. Stanbusky kept the check but told defendant he still would not release the drum set until the check cleared. After defendant left, Stanbusky and Frady believed the check was suspicious, and they contacted the police.

Landerman did not write or sign the check. She had never seen defendant before and did not give him the check for $1,000.

Davis police officers executed a search warrant at defendant's house. In a dresser drawer in defendant's bedroom, police found Landerman's driver's license.

In a videotaped interview with Detective Scott Smith of the Davis Police Department, defendant claimed his former girlfriend, Debbie, had given him the $1,000 check to compensate him for selling him a stolen drum set he had to return. Landerman's name was on the check, and Debbie had allegedly told defendant Landerman was her

2

mother.  Defendant asserted he had not known Landerman's driver's license was in his room.  He said he associated with a number of drug addicts who took advantage of him when he allowed them to stay at his house.

During the interview, defendant denied handling any of Landerman's checks besides the one he gave to Stanbusky.  Detective Smith then showed defendant check No. 1002, written for $5,000 on Landerman's account to defendant and paid to one Johnny Rodriguez.  Explaining this check, defendant stated he was going to act as a middle man in a drug deal for Rodriguez by depositing the check, withdrawing the money, and then giving it to Rodriguez to buy drugs.  Defendant, however, backed out of the deal, and his signature on the check was allegedly forged.

In an unrelated matter, defendant was arrested in January 2007 for trying to pass a forged check at a Sacramento bank.  The check was written on the account "Cook Reallty" (*sic*), and defendant claimed John Cook had written the check for him the night before.  Defendant gave the arresting officer a phone number for Cook, but when the officer called the number, an answering machine gave the name "Paul."  Defendant also had a fake driver's license with him at the time.

DISCUSSION

I

*Admission of Statement from Videotaped Interview*

Defendant contends the trial court erred when it admitted into evidence a statement from the videotaped interview by Detective Smith that $50,000 worth of checks had come out of Landerman's account.  Although defendant objected to admission of the entire interview, he did not object to this particular statement.  He asked the court to admonish the jury to disregard the statement, but the court denied his request.  He contends the court's actions in admitting the statement and in declining to admonish the jury constitute prejudicial error.  We disagree.

3

A.      *Additional background information*

Defendant moved in limine to exclude evidence of seven checks, written on Landerman's account but not charged in this case, because they had not been discovered to him by the prosecution. The court excluded six of the seven checks due to the discovery violation. The court permitted check No. 1002 to be admitted because defendant remembered the check and discussed it in his interview with Detective Smith.

Defendant also moved to exclude his videotaped interview with Detective Smith. The court advised the parties to meet and determine what objections would be made to the videotape. During trial, the parties met with the court in chambers to review the objections, going through the videotape's transcript line by line. The court redacted portions of the interview that discussed defendant's drug use. It also redacted references to the six excluded checks.

Back in court, defendant objected to the entire videotaped interview being played to the jury, asserting it was unduly prejudicial under Evidence Code section 352 and it contained hearsay. The trial court denied the objection. It noted it had already excluded portions it had determined were unduly prejudicial and that the hearsay objection was untimely.

The videotape played to the jury and the redacted transcript contained the following exchange:

"[Defendant]: 'Well man, I can't man, the ones who do it is all I can [tell you]. Honestly I'm looking to cut this off as best I can. I really do want to change so.'

"[Detective Smith]: 'You could start by cleaning those [expletive] out of your house. Alright, you are going to be out in a couple of days and I will give you a card. Call me, we'll talk, I'm not out to [expletive] I'm just doing my job and I sit here and there's fifty thousand dollars worth of check [*sic*] that come out of . . . account.'

"[Defendant]: '[Expletive.]'

4

"[Detective Smith]: 'And your name is up on two or three of them, maybe it was two of them. This one because you had it, this one.'

"[Defendant]: 'That's the one I turned . . . that's Lori's hand writing right there.'

"[Detective Smith]: 'All right man lets [*sic*] get you in jail, so you can get bailed out.' "

After the videotape was played, a juror submitted the following note:

"During the interrogation, [Detective] Smith indicated a large sum, ($50,000?), had been written against/taken from Ms. Landerman's account. Are any of the people involved in this case associated with the additional $49,000?"

The prosecutor asked that Detective Smith be permitted to testify regarding the seven excluded checks in order to answer the juror's question. Defendant requested the question be answered "no." The court denied both requests: "I'm not going to give them incorrect information by saying 'No,' and I am not going to permit an answer that will bring in evidence that was excluded because of a discovery violation."

After a brief recess, the court ruled as follows:

"I am not going to answer the juror's question, and Deputy Oldham is going to present the question to me in front of the jury, and the jury will see that I have that question.

"They've already been advised that their question may not be answered because it calls for evidence that is inadmissible, and they are not to speculate as to the reason why a question has not been asked.

"I'd also note that testimony that came in was by way of the interview, and it's on the last page where [Detective] Smith says, 'There's $50,000 worth of checks that come out of the account,' to which [defendant] responds, '[expletive].'

"And that's a – our review was that's the only place that this amount of money came up. It didn't come up in anyone's testimony as far as I was able to tell in my notes or as far as any party recalled."

Defense counsel then requested that the jury be admonished not to regard the statement for its truth. The court denied this request:

"I will say, in addition, this is not something as to which [defendant] made an admission; this is a statement made by an officer in the form of a question. This was a question and [a response].

"The jury has been advised that a question is merely a question, granted in the context of a trial, but that you don't presume something from the asking of a question that that's a true statement. And I don't find that this is, at this point, appropriate to exclude.

"It was admitted in front of the jury after a review of the transcript and rulings by the Court, and at this point, [the prosecutor] has indicated that he is not going to pursue this, and I think that that's sufficient."

The court never discussed the juror's question with the jury.

B. *Analysis*

Defendant has forfeited his challenge to the court's admission of Detective Smith's reference to $50,000 coming out of the account. " ' "[Q]uestions relating to the admissibility of evidence will not be reviewed on appeal in the absence of a specific and timely objection in the trial court on the ground sought to be urged on appeal. [Citation.]" ' [Citations.]" (*People v. Williams* (2008) 43 Cal.4th 584, 620; Evid. Code, § 353.) Defendant raised no specific objection to Detective Smith's statement, even after reviewing the interview transcript in chambers and going over it line by line with the court and the prosecutor.

Defendant's objection to the interview in its entirety under Evidence Code section 352 was insufficient to preserve this claim. His failure to raise a specific objection before the videotape was played to the jury gave the court no opportunity to consider or correct the error he raises here. Without giving the court that opportunity, he failed to preserve the claim. (See *People v. Solomon* (2010) 49 Cal.4th 792, 820-821 [in limine motion to exclude portions of videotaped postarrest statement under Evidence Code section 352 did

6

not preserve claim against specific statement in the videotape shown to the jury where the in limine motion failed to identify the particular passage in question or argue its purported prejudicial effects].)

Defendant contends counsel's failure to object to Detective Smith's statement was ineffective assistance of counsel. To prove ineffective assistance, defendant must show (1) his counsel's performance fell below objective standards of reasonableness, and (2) prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674, 693].) Prejudice occurs where there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. (*Id*. at p. 694.)

Defendant has failed to establish prejudice. Even if the statement had been redacted, there is no reasonable probability he would have received a more favorable outcome. The evidence of his guilt was overwhelming. He was charged with one count each of forgery, attempted grand theft, and attempted theft from an elder, and the evidence left no doubt he committed those crimes. He attempted to purchase a drum set using a forged $1,000 check drawn on Landerman's account. Landerman, 97 years old, did not know defendant and never authorized him or anyone else to use the check. Landerman's driver's license was found in a dresser drawer in defendant's bedroom. And defendant had attempted to pass another check drawn on Landerman's account, this one to Rodriguez. The jurors needed evidence of only one forgery on Landerman's account to convict defendant, no matter how much money was missing from the account, and they had it. Detective Smith's statement had no consequential impact on their decision.

For the same reason, we find no error in the court's denial of defendant's request for an admonition. Detective Smith's statement could have little bearing on the jury's evaluation of the admitted evidence.

II

*Presentence Custody Credits*

Defendant contends the trial court erred in its award of presentence credit. The trial court awarded him 520 days credit, comprised of 260 custody credits and 260 conduct credits under section 4019. Defendant asserts he is entitled to 580 days credit: 290 days of custody credit and another 290 days of conduct credit under Penal Code former section 2933 at the rate of one conduct credit for each day in custody. Alternatively, he asserts that if section 2933 does not apply, he is still entitled to 290 days of conduct credit under a former version of section 4019 that was adopted while he was in custody, arguing the amended version applied to all of the time he was in custody. Defendant's first argument is correct, and we will order the abstract of judgment be amended accordingly.

Defendant was in custody from his arrest in this matter on August 7, 2007, until his sentencing on July 28, 2011. He spent much of this time in custody for other criminal offenses, but he was in custody for this offense for a total of 290 days: two days from August 7, 2007, to August 8, 2007; 182 days credited him from serving a one-year sentence in a state matter from September 26, 2008, to September 25, 2009, that was subsequently modified to reflect other time served; and 106 days from April 14, 2011, to July 28, 2011. We will modify the judgment to award 290 custody credits.

Defendant also contends that the version of section 2933 in effect at his sentencing granted him one day of credit for each day served in presentence custody. At that time, subdivision (e) of former section 2933, notwithstanding section 4019's more restrictive provisions for conduct credits, granted a prisoner sentenced to state prison for whom the sentence was executed one day of conduct credit for each day in presentence custody so long as the prisoner was not required to register as a sex offender, was not committed for a serious felony, or did not have a prior serious felony conviction. (Stats. 2010, ch. 426,

8

§ 1, eff. Sept. 28, 2010.)  Defendant qualifies for the one-for-one conduct credits authorized under this statute, and the trial court erred by not providing them.

The Attorney General contends the credits authorized by former section 2933, subdivision (e), were to be applied by the Department of Corrections and Rehabilitation (CDCR), as other credits authorized by other subdivisions of section 2933 were the responsibility of that agency and outside the trial court's jurisdiction.  This argument has been rejected:  "It would be absurd to interpret the statutory scheme in such a fashion as it is the trial court, not the CDCR, that is positioned to determine whether a defendant is entitled to conduct credit for the period of local presentence confinement.  Consequently, we reject the Attorney General's argument, and we find that defendant was entitled to have the trial court credit him with the conduct credit authorized by former section 2933, subdivision (e)."  (*People v. Tinker* (2013) 212 Cal.App.4th 1502, 1509.)

## DISPOSITION

The judgment is hereby modified to award defendant 290 days of presentence custody credit and 290 days of presentence conduct credit.  The trial court is directed to prepare an amended abstract of judgment reflecting these changes and to forward a certified copy of the amended abstract to CDCR.  As modified, the judgment is affirmed.


      NICHOLSON     , Acting P. J.


We concur:


     BUTZ        , J.


     DUARTE     , J.