[No. E020775. Fourth Dist., Div. Two. Sept. 8, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
REYES ACUNA MONARREZ, JR., Defendant and Appellant.

**COUNSEL**

Ronnie Duberstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Robert M. Foster and Michele Linley, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**McKINSTER, J.**—A jury convicted defendant and appellant Reyes Acuna Monarrez, Jr., of possession of heroin for sale (Health & Saf. Code, § 11351), possession of cocaine for sale (Health & Saf. Code, § 11351), and receiving stolen property. (Pen. Code, § 496, subd. (a).) On this appeal, his sole contention is that the trial court improperly imposed separate sentences for the two drug offenses, the three-year midterm on one count and a one-year consecutive term for the second count.[1] He contends that the two drug offenses involved essentially the same act, and that separate punishment was barred by Penal Code section 654. We disagree, and affirm the judgment.

## STATEMENT OF FACTS

We provide a somewhat detailed account of the development of the case, as it bears particularly on the arguments of respondent. The prosecution of defendant was part of the culmination of several years of apparently sporadic investigation and surveillance in connection with reports of drug activity at various locations. Between 1991 and 1993, defendant's relatives, Maximino Acuna Monarrez and Florencio Acuna Monarrez, were either seen in suspicious activity or owned vehicles connected to such activity. Defendant's first registered appearance was in 1995, when he was present during the serving of a narcotics search warrant.[2] Shortly thereafter, defendant and Raymundo Acuna Monarrez were observed entering a house which immediately became the subject of suspiciously heavy traffic. After several more false starts,[3] the Monarrez vehicles were tracked to a certain address in north San Bernardino, and a search warrant was obtained for the residence. When officers served the warrant, Raymundo Monarrez, Sr., answered the door. Defendant was inside, along with Angel, Adrian, and Carmen Monarrez. A semiautomatic handgun and currency were found in the residence, as well as the packaged heroin and cocaine which were the basis for the charges in this case.

Meanwhile, Raymundo Acuna Monarrez was detained at another location, driving one of the vehicles which the officers had observed involved in suspicious activity since 1991.[4]

---

[1]Sentence on the receiving conviction is to run concurrently.

[2]No narcotics were found, however.

[3]The Monarrez family apparently made frequent moves, and earlier searches turned up either empty houses or no contraband.

[4]No narcotics were found in the vehicle. However, a small amount of narcotics *had* been found in the vehicle, driven by Raymundo, during a traffic stop a week earlier.

## Discussion

■ Before its amendment in 1997, and at all times relevant here (the changes do not affect our discussion), Penal Code section 654 provided that "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; . . ." The statute did not prevent multiple *convictions* for the same conduct, only multiple *punishment*. In such a case, the proper procedure is to stay execution of sentence on one of the offenses. (*People* v. *Pearson* (1986) 42 Cal.3d 351, 359-361 [228 Cal.Rptr. 509, 721 P.2d 595].) The quoted language bars multiple punishment where the convictions arise out of an indivisible transaction and have a single intent and objective. (*Neal* v. *State of California* (1960) 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839]; see also *People* v. *Latimer* (1993) 5 Cal.4th 1203, 1216 [23 Cal.Rptr.2d 144, 858 P.2d 611], affirming the rule of *Neal*.) Whether a defendant did in fact have multiple objectives is generally a question of fact for the trial court, and its decision will be upheld on appeal if supported by substantial evidence. (*People* v. *Braz* (1997) 57 Cal.App.4th 1, 10 [66 Cal.Rptr.2d 553].)

■ In this case, defendant argues that the possession of the cocaine and the heroin for purposes of sale evinced but a single criminal objective. Narcotics cases have, in fact, provided fodder for numerous appellate opinions discussing the applicability of Penal Code section 654. In several situations, courts have had little difficulty in finding multiple punishment to be appropriate. For example, in *People* v. *Goodall* (1982) 131 Cal.App.3d 129, 147-148 [182 Cal.Rptr. 243], defendants were associated with a "drug lab" which contained not only chemical equipment, but chemicals essential for the manufacture of phencyclidine (PCP), as well as the finished product. They were held properly convicted *and punished* for the multiple offenses of manufacturing PCP, possession of PCP, and possession of chemicals for use in the manufacture of PCP. The appellate court held that it was reasonable for the trial court to have found that the defendants entertained three separate objectives: to manufacture PCP, to sell it, and to manufacture *more* with the remaining chemicals. Similarly, in *People* v. *Green* (1988) 200 Cal.App.3d 538, 544-545 [246 Cal.Rptr. 164], multiple punishment was upheld for convictions of possession of narcotics, maintaining a place for selling or using narcotics, and maintaining a *fortified* place designed for the sale, possession, or manufacture of narcotics. And in *People* v. *Menius* (1994) 25 Cal.App.4th 1290, 1296-1297 [31 Cal.Rptr.2d 15], this court followed *Goodall* and *Green* in a case in which defendant had been convicted of, and punished for, both possession of marijuana and possession of various chemicals with the intent to manufacture methamphetamine, with both charges arising from discoveries made during a single search.

However, in *In re Adams* (1975) 14 Cal.3d 629, 635-636 [122 Cal.Rptr. 73, 536 P.2d 473], the court struck down multiple punishment for a defendant who had been caught transporting several types of contraband in his vehicle. Reasoning that defendant entertained only the single objective of delivering the narcotics to a cohort, the court found an "indivisible course of conduct . . . which . . . results in the commission of a single punishable offense." Defendant argues that *Adams* requires a finding that he harbored a single intent and objective in this case—to sell illegal drugs, no matter how many individual types of contraband he possessed for this purpose.

We disagree. Although *Goodall*, *Green*, and *Menius* are obviously distinguishable from this case in that all involved different types of *offenses*, while this case involves the same *offense*, *People* v. *Barger* (1974) 40 Cal.App.3d 662, 672 [115 Cal.Rptr. 298] is directly on point. In *Barger*, defendant received separate punishments for possessing cocaine, Secobarbital, and marijuana, as well as for possessing heroin for sale. Rejecting defendant's contention that he had only the single objective of possessing drugs to trade for automatic weapons,[5] the court commented that California courts had "uniformly" held that Penal Code section 654 "does not preclude multiple punishment for simultaneous possession of various narcotic drugs." (*Ibid.*) The *Barger* court relied, inter alia, on *People* v. *Lockwood* (1967) 253 Cal.App.2d 75, 82-83 [61 Cal.Rptr. 131], and *People* v. *Lopez* (1959) 169 Cal.App.2d 344, 350-351 [337 P.2d 570], both of which, like *Barger* and this case, involved multiple convictions and punishments for multiple possessions in cases where all contraband was seized during a single search.

*Adams* does not compel a rejection of *Barger* and its predecessors, which it cited without disapproval. (14 Cal.3d at p. 635.) The court in that case focused on the "act" of transportation. It has been well recognized that the transportation of illegal drugs poses special dangers and substantially increases the risk to the public by, for example, expanding the availability of the contraband. (*People* v. *Rogers* (1971) 5 Cal.3d 129, 136-137 [95 Cal.Rptr. 601, 486 P.2d 129].) It was reasonable for the court in *Adams* to find a single illegal intent where the defendant's sole act was to move a large quantity of drugs from one place to another. Furthermore, in *Adams* the evidence showed that defendant intended to deliver all of the drugs to a single recipient. *Adams* simply does not deal with the case in which the defendant has been found to possess more than one particular illegal drug, or possess it with the intent to sell to a presumptively large number of buyers.

As we pointed out in *People* v. *Menius*, although in a slightly different context, "[i]t would be absurd to hold that a criminal who deals in one

---

[5]Which he would then, apparently altruistically, turn over to law enforcement. At least this was the defense.

contraband substance can expand the scope of his inventory without facing additional consequences." (25 Cal.App.4th at p. 1297.) As we also noted, different drugs have different effects and pose different dangers to society. Although the overall intent is always to make money, the objectives of selling cocaine and heroin are separate.

We agree with defendant that the trial court's determination that "the crimes were committed at different times and separate places," is not supported by the facts that we have set out above. Although it appears that defendant was probably involved in a long course of dealing drugs, he was not charged with two separate acts of selling, but with two counts of possession committed at the same time—the date of the search and discovery of the heroin and cocaine. These crimes were committed simultaneously.

However, in our view this makes no difference in our analysis of the challenged sentence. The intent of Penal Code section 654 is to ensure that punishment is commensurate with culpability. (*People* v. *Perez* (1979) 23 Cal.3d 545, 552 [153 Cal.Rptr. 40, 591 P.2d 63].) However, as *Perez* points out, this concept works both ways. It is just as undesirable to apply the statute to lighten a just punishment as it is to ignore the statute and impose an oppressive sentence. The evidence supported a finding that defendant had been engaged in multiple sales and intended to make multiple sales of the narcotics which he possessed. The narcotics are separately classified and regulated by the Legislature; they have different effects and pose different hazards to society. The punishment imposed here was entirely fair.

We have earlier suggested that the *Barger* line of cases survives *Adams*. (See *People* v. *Romero* (1997) 55 Cal.App.4th 147, 157 [64 Cal.Rptr.2d 16].) We now make that suggestion explicit.

### DISPOSITION

The judgment is affirmed.

Hollenhorst, Acting P. J., and Gaut, J., concurred.

On October 1, 1998, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied December 22, 1998. Mosk, J., Kennard, J., and Werdegar, J., were of the opinion that the petition should be granted.