[No. H037306. Sixth Dist. Jan. 24, 2013.]

THE PEOPLE, Plaintiff and Respondent, v.
ALAN CHARLES TINKER, Defendant and Appellant.

## COUNSEL

Michael E. Allen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Laurence K. Sullivan, Stan Helfman and Christopher W. Grove, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MIHARA, J.**—Defendant Alan Charles Tinker pleaded no contest to transportation of methamphetamine (Health & Saf. Code, § 11379, subd. (a)) and possession of methamphetamine for sale (Health & Saf. Code, § 11378), and admitted prior controlled substance conviction enhancement allegations

(Health & Saf. Code, § 11370.2, subd. (c)).[1] The court imposed concurrent two-year terms for the two substantive counts and a consecutive three-year term for one of the prior conviction enhancements. Defendant was awarded 198 days of actual custody credit and 98 days of conduct credit. On appeal, he argues that the trial court violated Penal Code section 654[2] by imposing prison terms for both substantive counts, and he claims that the trial court erred in failing to award him additional conduct credit under former section 2933, subdivision (e). The Attorney General concedes that defendant was eligible for the additional conduct credit he seeks under former section 2933, subdivision (e) but argues that only California's Department of Corrections and Rehabilitation (the CDCR) had the power to award such credit. We agree with defendant on both points and modify the judgment accordingly.

## I. Factual Background

On February 3, 2011, a sheriff's deputy pulled over defendant's minivan because he recognized defendant and knew he lacked a valid driver's license. The deputy also knew that defendant was a "narcotics user" and that he was on probation for possession of narcotics. Defendant and his dog were alone in the minivan. While the deputy was patsearching defendant, defendant pulled an object out of his waistband and "popped" it into his mouth. The deputy forced defendant to spit it out. The object was a clear bag containing a nearly "golf ball" sized amount of methamphetamine. The deputy found another "identical" bag with the same contents in defendant's pocket. Each of these bags contained about an eighth of an ounce of methamphetamine. A user would not ordinarily have that quantity of methamphetamine.

A search of the minivan revealed that it contained a large quantity of personal belongings and that defendant had been living in it. The deputy found in the minivan paperwork bearing defendant's name, an expensive digital camera, three pellet guns, an iPod, and three cell phones. One of the cell phones was sitting on the driver's seat and alerting. A text message on the phone said: "Need teen or ball now." "Teen" describes a sixteenth of an ounce of narcotics, while "ball" describes an eighth of an ounce.

In the back of the minivan, behind the front passenger seat, there was a cardboard box about the size of a shoe box. The box was "partially opened" and was "right there on top of everything." This box contained three quart-sized Ziploc bags. One of the quart-sized Ziploc bags contained 16 other bags. The 16 bags each contained a half-ounce of methamphetamine. A

---

[1] He also admitted allegations that he had possessed for sale an ounce or more of methamphetamine (Pen. Code, § 1203.073, subd. (b)(2)) and that he had violated his probation in three other cases, which were then sentenced together with this case.

[2] Subsequent statutory references are to the Penal Code unless otherwise specified.

second quart-sized Ziploc bag contained 13 bags, 12 of which contained the identical amounts that the 16 bags contained. The 13th bag contained an ounce of methamphetamine. The third quart-sized Ziploc bag contained three bags that each contained a quarter-ounce of methamphetamine. In all, the box contained about a pound of "very high quality," "very pure" methamphetamine with a value of more than $30,000. A pound is "an enormous amount of methamphetamine." A typical methamphetamine user ordinarily possesses only a gram or less. The smaller bags were the same type of bags as the ones found on defendant's person. No methamphetamine paraphernalia was found in the minivan or on defendant's person.

Defendant admitted that the minivan was his, that he was living out of it, and that the contents were his except for the methamphetamine in the box. He claimed that he "didn't know anything about that." Defendant admitted that the methamphetamine in his pockets was his, and he claimed that it was for his "[p]ersonal use." He said that his preferred method of drug use was injection. Defendant explained that he was unable to lock the van, and people would use it as a crash pad or a place to "shoot dope in or hide out in." Defendant insisted that he had never seen the box before the deputy found it in his van.

## II.  Procedural Background

In the midst of a jury trial on the transportation and possession for sale counts, after the prosecution had rested and defendant had begun his testimony for the defense, defendant pleaded no contest to both counts and admitted the allegations. The court indicated that he would receive a state prison sentence of between four years four months and seven years. This sentence would include defendant's "probation cases," which were also then pending before the trial court. Defendant admitted violating his probation in those other three "probation" cases. When the court took defendant's pleas and admissions, it said: "Now, as a result of this conviction, since it is 654, if you ever are—I mean, Court will find obviously 654 which means encompasses the same crime . . . ."

The prosecution sought the maximum of seven years, while the defense sought the minimum term of four years four months. The probation report recommended a nine-year prison term and noted that the prison term for the possession for sale count should be "stayed per 654 PC."

The court imposed a five-year prison term. It selected the lower term of two years for the transportation count and a two-year concurrent middle term for the possession for sale count. In imposing the concurrent term, the court explained that it was doing so because the possession for sale count "arises

out of the same facts and circumstances" as the transportation count. A three-year consecutive term was imposed for one of the prior conviction allegations, and the court struck the other prior conviction allegation. Defendant was granted 198 days of actual custody credit and 98 days of conduct credit for a total of 296 days of credit. Defendant timely filed a notice of appeal from the judgment, and he sought and obtained a certificate of probable cause.

## III.  Discussion

### A.  Section 654

Defendant contends that the trial court erred in failing to stay under section 654 the two-year concurrent term for the possession for sale count. He argues that the two offenses were part of an indivisible course of conduct with a single intent and objective. The Attorney General claims that "[t]he record amply supports the trial court's implicit finding of multiple intents." She urges that defendant intended to sell the pound of methamphetamine in the van but possessed the methamphetamine on his person only for personal use. Defendant responds that "[i]t would be improper to manufacture an implied finding where the trial court has already made an explicit and contrary finding."

We agree with defendant. At the time of defendant's pleas, the trial court said that the "Court will find obviously 654 . . . ." The probation report agreed, and the prosecutor below did not argue otherwise. At the sentencing hearing, the court explicitly found that the possession for sale count "arises out of the same facts and circumstances" as the transportation count. The court never gave any indication that it had retreated from its earlier finding that "obviously 654" applied. Under these circumstances, we can only conclude that the trial court erred in failing to stay the concurrent term imposed for the possession for sale count since it had already found that section 654 applied.

### B.  Conduct Credit

■ Defendant's crimes occurred in February 2011. At that time, the September 2010 version of section 4019 was in force, and it provided that a defendant would receive two days of conduct credit for every *four* days of actual custody credit. (Stats. 2010, ch. 426, § 2.) At that same time, the September 2010 version of section 2933, subdivision (e) provided: "(1) Notwithstanding Section 4019 and subject to the limitations of this subdivision, a prisoner sentenced to the state prison under Section 1170 for whom the sentence is executed shall have *one day deducted* from his or her period

of confinement *for every day* he or she served in a county jail, city jail, industrial farm, or road camp from the date of arrest until state prison credits pursuant to this article are applicable to the prisoner. [¶] (2) A prisoner may not receive the credit specified in paragraph (1) if it appears by the record that the prisoner has refused to satisfactorily perform labor as assigned by, or has not satisfactorily complied with the reasonable rules and regulations established by, the sheriff, chief of police, or superintendent of an industrial farm or road camp. [¶] (3) Section 4019, and not this subdivision, shall apply if the prisoner is required to register as a sex offender, pursuant to Chapter 5.5 (commencing with Section 290), was committed for a serious felony, as defined in Section 1192.7, or has a prior conviction for a serious felony, as defined in Section 1192.7, or a violent felony, as defined in Section 667.5." (Stats. 2010, ch. 426, § 1, italics added; former § 2933, subd. (e), italics added.) Thus, former section 2933, subdivision (e) authorized one-for-one conduct credit. No changes to section 4019 or section 2933, subdivision (e) had become operative when defendant was sentenced in August 2011. (Stats. 2011, ch. 15, § 482; Stats. 2011, ch. 39, § 53; Stats. 2011, 1 Ex. Sess. 2011–2012, ch. 12, § 35.)

Defendant has never been convicted of a serious or violent felony, nor is he required to register as a sex offender. Hence, the credit provisions of former section 2933, subdivision (e) governed his eligibility for presentence conduct credit. The Attorney General concedes that former section 2933, subdivision (e)'s one-for-one credit provisions apply to defendant. However, she argues that his claim that the trial court erred in failing to award such credit is "premature." The Attorney General maintains that "the trial court is not responsible for calculating or granting credits" under section 2933; "section 2933 credits fall within the purview of the California Department of Corrections and Rehabilitation (CDCR)." As support for this proposition, the Attorney General relies on a footnote in the California Supreme Court's recent decision in *People v. Brown* (2012) 54 Cal.4th 314 [142 Cal.Rptr.3d 824, 278 P.3d 1182] (*Brown*).

The defendant in *Brown* had been sentenced to state prison in 2007. (*Brown, supra*, 54 Cal.4th at p. 318.) He claimed that the version of section 4019 that became operative in January 2010 retroactively entitled him to additional conduct credit for the presentence custody he had served in 2007. The California Supreme Court concluded that the January 2010 version of section 4019 was not retroactive and rejected his claim. He also contended for the first time in the California Supreme Court that the September 2010 amendment of section 2933 entitled him to additional conduct credit. (*Brown*, at p. 322, fn. 11.) The footnote upon which the Attorney General relies was the court's response to this new claim: "This new claim is not properly before us, and we do not address it. Instead of identifying an error in the judgment on review, defendant asserts *the CDCR* violated former section 2933 by failing

to award additional local conduct credits at the time the former section took effect. Such a claim must logically be brought in a petition for habeas corpus against the official empowered to award such credits, namely the Director of the CDCR." (*Ibid.*)

The Attorney General reads far too much into this footnote. In *Brown*, the prisoner had been sentenced by the trial court in 2007, the same year he had served his presentence custody time. The "judgment on review" was the Court of Appeal's 2010 judgment regarding his claim that he was entitled to retroactive conduct credit under the January 2010 version of section 4019. He did not contend that the Court of Appeal (or the trial court) had somehow erred by failing to apply former section 2933, subdivision (e), which did not become operative until after the Court of Appeal's decision. Instead, he contended that *the CDCR* had violated former section 2933, subdivision (e). Hence, the California Supreme Court reasonably concluded that such a claim was not properly before it on review of the Court of Appeal's judgment.

The case before us is not remotely similar. Defendant is appealing to this court from a trial court judgment entered in 2011, and he contends that *the trial court* erred in failing to apply former section 2933, subdivision (e), which was enacted in 2010 and in effect at the time of his 2011 offense, at the time of his 2011 custody time, and at the time of his 2011 sentencing. This is not a case like *Brown*, in which no trial court error could possibly be claimed, and in which the defendant was actually challenging an action or inaction by the CDCR.

The Attorney General also argues that "the trial court had no authority to determine appellant's eligibility or lack thereof for the [former] section 2933 credit" because former section 2900.5 did not reference former section 2933, subdivision (e) but only section 4019. It is true that former section 2900.5 did not reference former section 2933, subdivision (e). "In all felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in custody, including, but not limited to, any time spent in a jail, camp, work furlough facility, halfway house, rehabilitation facility, hospital, prison, juvenile detention facility, or similar residential institution, all days of custody of the defendant, *including* days . . . credited to the period of confinement *pursuant to Section 4019*, shall be credited upon his or her term of imprisonment . . . ." (Former § 2900.5, subd. (a), italics added.) "It shall be the duty of the court imposing the sentence to determine the date or dates of any admission to, and release from, custody prior to sentencing and the total number of days to be credited pursuant to this section." (§ 2900.5, subd. (d).)

■ The failure of the 1998 version of section 2900.5 to explicitly reference conduct credit authorized by the short-lived 2010–2011 version of

section 2933, subdivision (e) does not indicate that the Legislature intended for presentence conduct credit to be calculated by the CDCR rather than by the trial court. "[T]he word 'including . . .' . . . is not ordinarily understood as expressing an intent to limit . . . ." (*Estate of Banerjee* (1978) 21 Cal.3d 527, 540 [147 Cal.Rptr. 157, 580 P.2d 657].) Here, former section 2900.5 used the word "including" before its reference to section 4019. We do not intuit from this language that the Legislature intended to exclude from former section 2900.5's ambit the conduct credit authorized by former section 2933, subdivision (e). It would be absurd to interpret the statutory scheme in such a fashion as it is the trial court, not the CDCR, that is positioned to determine whether a defendant is entitled to conduct credit for the period of local presentence confinement. Consequently, we reject the Attorney General's argument, and we find that defendant was entitled to have the trial court credit him with the conduct credit authorized by former section 2933, subdivision (e).

## IV. Disposition

The judgment is hereby modified to (1) stay under section 654 the term imposed for the possession for sale count and (2) award defendant 100 additional days of presentence conduct credit under former section 2933, subdivision (e). The trial court is directed to prepare an amended abstract of judgment reflecting these changes and to forward a certified copy of the amended abstract to the CDCR. The modified judgment is affirmed.

Premo, Acting P. J., and Márquez, J., concurred.