Filed 6/27/16

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C074139 |
| v. | (Super. Ct. No. SF121180A) |
| ARLON BUCHANAN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Joaquin County, George J. Abdallah, Jr., Judge.  Affirmed in part and reversed in part.

John Steinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Gerald A. Engler, Michael P. Farrell, Assistant Attorneys General, Eric L. Christoffersen, Brook A. Bennigson, Deputy Attorneys General, for Plaintiff and Respondent.

---

*       Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts I, II, and III of the discussion.

1

A jury convicted defendant Arlon Buchanan of possession of heroin for sale (Health & Saf. Code, § 11351; count 1), transportation of heroin for sale (*id*., § 11352; count 2), possession of methamphetamine for sale (*id*., § 11378; count 3), transportation of methamphetamine for sale (*id*., § 11379; count 4), possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1); count 5),[1] and possession of ammunition by a felon (§ 30305, subd. (a)(1); count 6).  The jury also found true the allegations defendant was armed during the commission of the four narcotics-related offenses (§ 12022, subd. (c); counts 1, 3, 4), had a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12), and had served four prior prison terms (§ 667.5, subd. (b)). The trial court sentenced defendant to serve 32 years and 8 months in state prison.

On appeal, defendant contends (1) the trial court erroneously excluded from the evidence a signed statement by a person who claimed to own some of the drugs and drug paraphernalia, and the handgun that were found, (2) defendant's convictions for possession and transportation of heroin must be reversed because the police violated his rights under *California v. Trombetta* (1984) 467 U.S. 479 [81 L.Ed.2d 413] (*Trombetta*) by destroying exculpatory evidence when they mixed together the similar-looking contents of two bindles before detecting heroin in the combined mass, (3) the mixture of the contents of the two bindles rendered the evidence of his possession and transportation of heroin insufficient, (4) section 654 precludes multiple punishments for his simultaneous transportation of methamphetamine and heroin for sale, (5) section 654 also prevents multiple punishments for his possession of a firearm as a felon and being armed in the commission of the narcotics offenses, and (6) multiple sentence enhancements are

---

[1]     Undesignated statutory references are to the Penal Code.

precluded under section 654 for being armed in the simultaneous commission of the four narcotics-related offenses.

On our own motion, we requested that the parties address three additional issues. First, whether section 654 applies to defendant's separate sentences for possession of heroin for sale and transportation of heroin for sale, as well as to his separate sentences for possession of methamphetamine for sale and transportation of methamphetamine for sale. Second, whether a conclusion section 654 applies to possession for sale and transportation for sale of the same substances would have any effect on the arming enhancements imposed under section 12022, subdivision (c), for each of defendant's narcotics convictions. Third, whether the California Supreme Court's holding in *People v. Jones* (2012) 54 Cal.4th 350 (*Jones*) precludes separate sentences for being a felon in possession of a firearm and for the firearm enhancements attached to his narcotics offenses -- all of which were based on defendant's possession of a single firearm on a single occasion.

We conclude the trial court did not abuse its discretion by excluding a hearsay statement from the owner of the vehicle where the contraband were found because the defense did not demonstrate due diligence in attempting to secure the testimony of the proposed witness. The trial court did not err in admitting evidence of the mixed substance that tested positive for heroin. The police did not destroy the evidence by combining the similar-looking contents of the two bindles nor did they discard any of the packaging materials from which they originated. We reject defendant's insufficiency of the evidence argument because it is undisputed that what the police found in defendant's possession was heroin.

We reject defendant's contention the trial court erred in imposing separate sentences for defendant's methamphetamine and heroin-related offenses. These were

3

different types of narcotics that increased defendant's potential customers. We accept the People's concession that section 654 applies to stay one of defendant's separate sentences for possession and transportation of heroin for sale, and also applies to stay one of defendant's sentences for possession and transportation of methamphetamine for sale. Finally, we conclude section 654 bars separate punishments for the defendant's possession of a single firearm on a single occasion.

Accordingly, we affirm defendant's convictions but reverse and remand for resentencing.

FACTUAL AND PROCEDURAL HISTORY

*Prosecution Evidence*

At 3:15 a.m. on August 2, 2012, defendant was driving a minivan in an area of Stockton known for narcotics sales and prostitution. Stockton Police Department Officers Kenneth Welter and Ronald Zalunardo stopped the van after noticing one of the taillights was inoperable. The officers asked to see defendant's driver's license but he said he did not have one. Officer Welter instructed defendant to get out of the van, pat searched him, and detained him in the back of their patrol vehicle. The officers looked into the van and saw a Bersa .380 semiautomatic handgun on the floor between the front seats. The gun turned out to be loaded with seven .380 hollow point bullets.

Approximately 5 to 6 inches from the gun was a brown coin purse containing "a very large golf-ball size" piece of crystal methamphetamine weighing 11.3 grams, 125 small Ziploc baggies in two sizes, a 1-inch Ziploc baggie containing tar heroin, and $117.05 in cash and coins. The police officers also found a pink purse on the floor behind the driver's seat. The pink purse contained a digital scale and a package containing eight unused hypodermic needles. On the part of the digital scale where items are placed to be weighed there was a white crystalline substance consistent with

4

methamphetamine. Brown tar consistent with tar heroin was found around the sides of the scale.

After finding the handgun and narcotics in the minivan, the officers searched defendant and found a bindle of tar heroin inside his pants pocket. The bindle of heroin found inside defendant's pants pocket and the coin purse under the front seats had the same appearance: both had the same sticky brown substance, were wrapped in the same way, and seemingly contained the same amount. Defendant did not appear to be under the influence of any controlled substance.

The officers looked up the van's registration based on its license plate and found it was registered to Jerry Haney. While the officers searched the van, Haney showed up at the scene riding a bike.

During the booking process, the contents of the two bindles of sticky brown substance were combined. The combined net weight was 0.58 grams and tested positive for the presence of heroin.

Stockton Police Department Sergeant Matthew Garlick testified as a narcotics expert. Sergeant Garlick testified narcotics dealing is an extremely dangerous activity and dealers often carry guns to protect themselves during deals. He explained the amount of heroin under defendant's control would provide five to six doses and have an approximate street value of $60. Given the form of the heroin found at the scene, the hypodermic needles would be a delivery mechanism for the drug. Drug dealers commonly sell hypodermic needles along with heroin. The amount of methamphetamine found at the scene sufficed for 100 "hits" or doses and would be worth approximately $200 to $300 on the street. In Sergeant Garlick's experience, that amount of methamphetamine was "not something that a user, someone on the street, would have the money to afford." The number of syringes found at the scene also indicated the heroin

was possessed for purposes of sale. And the number of Ziploc bags was consistent with sale of usable amounts of methamphetamine. The fact no methamphetamine pipe or dirty needles were found further indicated defendant was selling narcotics rather than using them himself.

The parties stipulated defendant had a prior felony conviction that barred him from lawfully possessing a firearm or ammunition. The parties also stipulated the van was not registered to defendant, the van was towed, and it was not claimed by anyone thereafter.

### *Defense Evidence*

Defendant testified on his own behalf as follows: On August 2, 2012, he was living at the Capri Motel with his girlfriends, Lenora and Sarah. Lenora was sick due to heroin withdrawal. She had no heroin left because she had purchased a counterfeit substance that looked just like the narcotic. Defendant took the counterfeit substance and put it into his pants pocket. Early that evening, Haney -- the owner of the minivan -- arrived at the motel with defendant's partner, Adam Cox. Around 3:00 a.m., defendant noticed Lenora was gone. Concerned about her, defendant took Haney's unlocked van because it did not require a key to start it. Defendant did not look around the van before he drove off because it would have made him look like a thief. As defendant was driving around and looking for Lenora, he was pulled over by the police. While defendant was detained in the backseat of the police car, he received a call from Haney. Haney rode over to the scene on one of defendant's bicycles.

Defendant stated the coin purse found in the car belonged to Cox. The baggie of heroin-like counterfeit substance found in defendant's pants pocket belonged to Lenora. The handgun in the van belonged to defendant's ex-girlfriend, Letricia Tyson.

6

Defendant denied selling drugs or having a job, explaining he did not support himself "too good" but instead "live[d] off the land." He received support from his family members and eight women with whom he had children.

Defendant admitted convictions for robbery in 1988 as well as three felony crimes of moral turpitude in 1991, 1996, and 2005.

Bernard Moore, an investigator for the public defender, testified that on the day before trial he went to the apartment listed as Haney's place of residence but found the apartment to be vacant. Moore gave Cox a subpoena the first time he met with Cox. But when Moore went back to talk to Cox, Cox's apartment was empty as well.

DISCUSSION

I

### *Exclusion of Evidence of a Statement Purportedly Made by Adam Cox*

Defendant contends the trial court erred in excluding out-of-court statements in which Cox purportedly claimed to own some of the narcotics and drug paraphernalia and the gun found in the van. Defendant claims the wrongful exclusion of the evidence denied him his right to present a defense. We conclude the trial court properly excluded the evidence.

**A.**

### *The Burden to Demonstrate Unavailability*

As the California Supreme Court has explained, " '[e]vidence of a statement by a declarant having sufficient knowledge of the subject is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and the statement, when made, . . . so far subjected him [or her] to the risk of . . . criminal liability . . . that a reasonable [person] in his [or her] position would not have made the statement unless he [or she] believed it to be true.' (§ 1230.) The proponent of such evidence must show that the

7

declarant is unavailable, that the declaration was against the declarant's penal interest when made and that the declaration was sufficiently reliable to warrant admission despite its hearsay character." (*People v. Duarte* (2000) 24 Cal.4th 603, 610-611.)

"A witness is unavailable if '[a]bsent from the hearing and the proponent of his or her statement has exercised reasonable diligence but has been unable to procure his or her attendance by the court's process.' ([Evid. Code,] § 240, subd. (a)(5).) Although section 240 refers to 'reasonable diligence,' this court has often described the evaluation as one involving 'due diligence.' (E.g., *People v. Sanders* (1995) 11 Cal.4th 475, 523; *People v. Cummings* (1993) 4 Cal.4th 1233, 1296; *People v. Price* (1991) 1 Cal.4th 324, 424.)" (*People v. Cromer* (2001) 24 Cal.4th 889, 898 (*Cromer*).) The *Cromer* court further explained that "the term 'due diligence' is 'incapable of a mechanical definition,' but it 'connotes persevering application, untiring efforts in good earnest, efforts of a substantial character.' (*People v. Linder* (1971) 5 Cal.3d 342, 346–347; accord, *People v. Sanders, supra,* 11 Cal.4th at p. 523.) Relevant considerations include ' "whether the search was timely begun" ' (*People v. Sanders*, *supra*, 11 Cal.4th at p. 523), the importance of the witness's testimony ([*People v.*] *Louis* [(1986)] 42 Cal.3d [969,] 991), and whether leads were competently explored (*People v. Enriquez* [(1977)] 19 Cal.3d [221,] 236–237)." (*Cromer*, *supra*, 24 Cal.4th at p. 904.)

We review the trial court's factual findings under the substantial evidence standard but independently review whether the facts demonstrate due diligence. (*Cromer, supra*, 24 Cal.4th at pp. 902-903.)

## B.

### *Cox's Unavailability*

Defendant asserts his trial attorney demonstrated that the defense exercised due diligence in attempting to locate Cox before moving to introduce his out-of-court

statement about owning some of the drugs and paraphernalia, and the gun found in the van. During trial and outside the presence of the jury, defendant's trial attorney stated his investigator, Moore, "attempted to contact Adam Cox, who is the person who has claimed responsibility for the narcotics in the back of the van." Defense counsel further explained: "As to the existence of Adam Cox, [the] prosecution's office is currently prosecuting [Cox], and he has a bench warrant he's failed to appear twice on. He's currently represented by Mr. Soldati, I've had contact with Mr. Soldati, [who] has not had contact with his client. So the man exists. And he has claimed responsibility for the narcotics in the back of the van, the charges that he is facing are in fact narcotics charges. And he's clearly unavailable, [and the] statement is clearly against his penal interests." Based on the assertion of unavailability, the defense sought to introduce a statement purportedly executed by Cox on September 20, 2012 -- more than six months before the trial in which defendant was convicted.[2] The trial court excluded the out-of-court statement on grounds it was insufficiently reliable.

We conclude that even if Cox's statements qualified as statements against penal interests, the evidence was properly excluded for lack of due diligence by the defense in attempting to locate Cox for trial. Although the defense asserted its investigator attempted to contact Cox, no information was provided to establish efforts were begun in a timely manner or even what efforts were made. The fact Cox was the subject of an outstanding bench warrant and was represented by his own attorney who did not know Cox's whereabouts did not substitute for a showing that "timely" and "preserving" efforts were made by the defense *in this case*. (See *Cromer, supra*, 24 Cal.4th at p. 904.) Because the defense in this case did not exercise due diligence in securing Cox as a

---

[2]     Defendant's first trial resulted in a mistrial in January 2013.

9

witness, we conclude Cox was not unavailable under Evidence Code section 240, subdivision (a)(5).

Defendant counters that the defense investigator went to Cox's apartment but could not locate him. In so arguing, defendant relies on testimony at trial that occurred *after* the trial court ruled on his motion to admit Cox's statement. Defendant cannot rely on evidence introduced *after* the trial court ruled on his motion to establish error in ruling on the motion. "[O]ne of the fundamental general rules of appellate review" is that, "on appeal, in considering whether the trial court erred, the appellate court cannot consider evidence that was not before the trial court." (*R & B Auto Center, Inc. v. Farmers Group, Inc*. (2006) 140 Cal.App.4th 327, 374 [Fybel, J., concurring and dissenting, citing *Doers v. Golden Gate Bridge etc.* (1979) 23 Cal.3d 180, 184, fn. 1; *Pulver v. Avco Financial Services* (1986) 182 Cal.App.3d 622, 632].) Moreover, even if we were to consider this evidence, it would still not establish the "untiring" efforts required for due diligence. (*Cromer, supra*, 24 Cal.4th at p. 904.) Going once to an apartment listed as a witness's address does not constitute the type of diligence that would have established unavailability.

The evidence of Cox's out-of-court statement was properly excluded.

## II

### *Defendant's Trombetta Motion*

Defendant contends the police violated their obligation under the federal Constitution as articulated in *Trombetta*, *supra*, 467 U.S. 479, to preserve exculpatory evidence when they mixed the similar-looking contents of two bindles and detected heroin in the combined mass. Thus, defendant argues the trial court erred in denying his motion to exclude evidence regarding the presence of heroin in the combined mass. We reject the argument.

In *Trombetta*, *supra*, 467 U.S. 479, the United States Supreme Court recognized the federal Constitution requires the government to preserve potentially exculpatory evidence and to turn the evidence over to the defense. (*Id.* at pp. 480-481, 485.) In this case, defendant asserts the police destroyed the potentially exculpatory value of the evidence by combining the two similar substances found near and on defendant's person. Underlying defendant's argument is the assumption that if one of the bindles -- such as the one found in his pants pocket -- would have tested negative, he would have been exonerated from the charges of possession and transportation of heroin. This assumption is wrong.

Had the police detected no heroin in one of the two bindles, the other would necessarily have tested positive for heroin because the combined mass contained heroin. Defendant's possession of one bindle of heroin -- even if in the bindle taken from the van -- would have sufficed for the convictions of possession and transportation of heroin. Defendant does not deny heroin *was* found in the mass of combined substances that were in his possession. In addition to the heroin, defendant had several brand new hypodermic needles available to sell along with the heroin as a means of facilitating customer's usage of the narcotic. Defendant did not possess the heroin for personal use because the police did not observe him to be under the effects of a narcotic nor did they find any dirty spoons used to prepare the heroin for injection. Moreover, the heroin bindle in the minivan was located in a purse along with a hundred doses of methamphetamine and more than a hundred small Ziploc bags that could be used for sales packaging. And a brown sticky substance that was consistent with tar heroin was found on the sides of the scale defendant had with him in the minivan.

Because even a single bindle of heroin in this context would have sufficed for the convictions of possession and transportation of heroin for sale, combination of the two

bindles during the booking process did not destroy any exculpatory evidence. Accordingly, the trial court properly denied defendant's *Trombetta* motion.

### III

### *Sufficiency of the Evidence for Possession and Transportation of Heroin for Sale*

In a related argument, defendant contends the evidence was insufficient to convict him of possession and transportation of heroin for sale. As we noted in part II, defendant does not deny at least one of the bindles found in his possession contained heroin. Nonetheless, he assumes the combination of the contents of the two bindles destroyed evidence relating to the heroin charges. On this assumption, he contends the evidence was insufficient to convict him of the heroin-related charges.

" 'In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] . . . "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." [Citation.] We do not reweigh evidence or reevaluate a witness's credibility. [Citation.]' " (*People v. Nelson* (2011) 51 Cal.4th 198, 210.) Reversal on the ground of insufficiency of the evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support . . .' " the jury's finding. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

Here, the evidence sufficed to convict defendant of possession and transportation of heroin for sale. The evidence of his possession of heroin along with paraphernalia to

facilitate sales would have sufficed to sustain the convictions even if defendant had only been found to be in possession of one bindle of tar heroin. Accordingly, the combination of the two bindles into one mass did not render the evidence of his possession and transportation of that heroin insufficient.

We reject defendant's assertion that only a de minimus amount of heroin was found. The combined weight of the tar substance in the two similar bindles yielded 0.58 grams net weight. The criminalist who tested the substance testified the substance was tar heroin, was sufficient for five or six doses, and carried a street value of approximately $60. This testimony constituted solid and credible evidence defendant possessed and transported heroin for sale. Even if defendant's speculation that one of the two similar bindles might not have contained heroin were true, the evidence defendant had at least one bindle with two or three doses of heroin still suffices to support his convictions.

## IV

### *Section 654*

Defendant contends section 654 precludes multiple punishments for his transportation of methamphetamine and heroin for sale, multiple punishments for his possession of a firearm as a felon and being armed in the commission of the narcotics offenses, and multiple punishments for being armed in the simultaneous commission of the four narcotics-related offenses.

As noted in our introduction, this court on its own motion raised the issues (1) whether section 654 applies to the possession and transportation of heroin and also to the possession and transportation of methamphetamine, (2) whether a stay of either the possessory or transportation offenses also stays any attached arming enhancements, and (3) whether *Jones*, *supra*, 54 Cal.4th 350 prohibits sentence enhancements based on

13

possession of the same firearm for which defendant was convicted and sentenced for being a felon in possession of a firearm.

As we explain, section 654 applies to possession for sale and transportation for sale of the same substance. The California Supreme Court's holding in *Jones*, *supra*, 54 Cal.4th 350 precludes multiple sentences for defendant's possession of a single gun on a single occasion.

**A.**

***Transportation of Heroin and Methamphetamine for Sale***

The trial court imposed consecutive sentences for defendant's convictions of count 2 for transportation of heroin for sale and count 4 for transportation of methamphetamine for sale. Defendant contends the trial court violated section 654 by imposing consecutive terms for counts 2 and 4 because his transportation of the two types of narcotics for sale was a "single" and "simultaneous" act. We disagree.

Section 654, subdivision (a), provides in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Section 654 bars multiple punishment for separate offenses arising out of a single occurrence when all of the offenses were incident to one objective. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208.) Whether section 654 applies is a question of fact for the trial court, and its finding will be upheld if there is substantial evidence to support of the finding. (*People v. Kurtenbach* (2012) 204 Cal.App.4th 1264, 1289.)

Nonetheless, "California courts have uniformly held that section 654 does not preclude multiple punishment for simultaneous possession of various narcotic drugs." (*People v. Barger* (1974) 40 Cal.App.3d 662, 672; see also *People v. Monarrez* (1998)

14

66 Cal.App.4th 710, 714.) *Monarrez* illustrates this point. That case involved convictions based on the simultaneous possession of both heroin and cocaine for sale and for which the trial court imposed separate sentences. (*Id.* at p. 712.) On appeal, the defendant argued both offenses involved "essentially the same act," for which separate punishment was barred under section 654. (*Ibid.*) The *Monarrez* court rejected the contention on grounds that " '[i]t would be absurd to hold that a criminal who deals in one contraband substance can expand the scope of his [or her] inventory without facing additional consequences' " and "[a]lthough the overall intent is always to make money, the objectives of selling cocaine and heroin are separate." (*Id.* at pp. 714–715.) Moreover, the "evidence supported a finding that defendant had been engaged in multiple sales and intended to make multiple sales of the narcotics which he possessed." (*Id.* at p. 715.)

Here, the trial court properly imposed separate punishments for defendant's transportation for sale of heroin and methamphetamine. As the prosecution's narcotics expert testified, heroin and methamphetamine addicts constitute separate groups of drug users because the drugs themselves are very different. Methamphetamine is a stimulant, while heroin is a depressant. As the narcotics expert explained, methamphetamine and heroin are "two different narcotics, something that the same person would not use commonly. I'm not saying it hasn't been done, but it's not very common." In other words, defendant was transporting different drugs for different types of drug abusers. Based on the different markets for the different drugs, defendant intended the transportation to serve different purposes.

Defendant relies on section 654 and *In re Adams* (1975) 14 Cal.3d 629 (*Adams*) to argue he should not have been separately sentenced for his two transportation of narcotics convictions. In *Adams*, the California Supreme Court struck the multiple punishments

15

imposed on a defendant who had been apprehended transporting several types of contraband in his vehicle. (*Id.* at pp. 637-638.) On grounds defendant had only the single objective of delivering the narcotics to a cohort, the *Adams* court determined transportation offenses constituted an "indivisible course of conduct [that] results in the commission of a single punishable offense." (*Id.* at p. 635.) Defendant argues *Adams* applies to him and leads to the conclusion he harbored a single intent and objective in this case -- to transport illegal drugs.

*Adams, supra,* 14 Cal.3d 629 is inapposite because defendant in this case was not transporting a shipment of narcotics to a single recipient. Instead, defendant was set up to sell small amounts of drugs to different groups of users -- some addicted to a stimulant and some addicted to a depressant. By transporting separate types of drugs for separate groups of purchasers, defendant is subject to separate punishments. Consequently, the trial court did not err in imposing separate sentences for counts 2 and 4.

**B.**

***Possession of Heroin and Transportation of Heroin; Possession of Methamphetamine and Transportation of Methamphetamine***

In defendant's supplemental briefing on the issue of whether section 654 applies to his separate sentences for possession for sale and transportation for sale of the same narcotic, defendant adheres to his view he may not be separately sentenced for transportation of heroin for sale and transportation of methamphetamine for sale. However, the People concede section 654 applies to stay his separate sentences for possession of heroin for sale and transportation of heroin for sale. Likewise, the People concede the stay also applies to defendant's separate sentences for possession of methamphetamine for sale and transportation of methamphetamine for sale. We accept the concessions.

16

When police officers discover a defendant in an automobile in possession of a controlled substance, section 654 applies to preclude separate punishments for the same act of transporting for sale the controlled substance and possessing it for sale. (*People v. Tinker* (2013) 212 Cal.App.4th 1502, 1506 [holding that section 654 applied to convictions for possession of heroin for sale and transportation of the same heroin for sale]; *People v. Avalos* (1996) 47 Cal.App.4th 1569, 1583 [same]; see also *People v. Correa* (2012) 54 Cal.4th 331, 340, citing with approval *People v. Roberts* (1953) 40 Cal.2d 483, 491 [holding possession, sale, and attempt to transport heroin constitute only one act].) Here, the trial court erred in imposing separate sentences for defendant's possession for sale and transportation for sale of the same controlled substance on the same occasion. Under section 654, either the sentence for possession of heroin for sale or the sentence for transportation of heroin for sale must be stayed. So too on remand, either the sentence for possession of methamphetamine for sale or transportation of methamphetamine for sale must be stayed.

## C.

### *Being Armed in the Commission of a Narcotics Offense on the Same Occasion as Being a Felon in Possession of a Firearm*

Defendant next contends the trial court erred in imposing separate punishments for being a felon in possession of a firearm and the enhancements for being armed in the commission of a narcotics offense. As we explain, the contention has merit.

In *Jones*, the California Supreme court noted the fundamental principle that "[s]ection 654 prohibits multiple punishment for a single physical act that violates different provisions of law." (54 Cal.4th at p. 358.) The single physical act in *Jones* was the defendant's possession of a loaded .38-caliber revolver in a door panel of the car he was driving. (*Id.* at p. 352.) Based on possession of the single firearm, the defendant was

17

convicted of possession of a firearm by a felon, carrying a readily accessible concealed and unregistered firearm, and carrying an unregistered firearm in public.  (*Ibid.*)  The trial court sentenced the defendant to serve separate terms for each of these three convictions.  (*Ibid.*)  The *Jones* court, however, concluded section 654 applied to stay the sentences for all but one of the convictions.  (*Ibid.*)

In striking two of the three sentences for possession of the same firearm, the California Supreme Court acknowledged various firearm statutes address differing risks to the public.  (*Jones*, *supra*, 54 Cal.4th at p. 354.)  For example, felons in possession of concealable firearms implicate "the risk to public safety deriv[ing] from the type of person involved."  (*Ibid.,* quoting *People v. Harrison* (1969) 1 Cal.App.3d 115, 122.)  By contrast, possession of a loaded firearm "strikes at the hazard arising when any person carries a loaded firearm in public" because "the mere fact the weapon is loaded is hazardous, irrespective of the person . . . carrying it."  (*Jones*, at p. 354, quoting *Harrison*, at p. 122.)  However, both convictions may arise out of the same possession of a single firearm on the same occasion.  (*Ibid.*)

*Jones* considered an approach to section 654 for firearm convictions that relied on the "intent and objective test" to determine whether the statutory stay on sentences applied.  (*Jones*, *supra*, 54 Cal.4th at p. 359.)  The *Jones* court, however, rejected the proposition multiple intents or objectives could preclude section 654 from applying to possession of a firearm on a single occasion, explaining:

"Finding a single objective here might resolve this particular case.  But what if the evidence also showed that the defendant wanted to intimidate rival gang members, or go hunting, or harbored any other of the myriad possible objectives for illegally possessing a firearm?  Would multiple punishment be allowed in that case?  Or what if the evidence does not show what the defendant's objective was?  A defendant does not have to talk to

18

the police.  What is the court to do then?  Rather than force the court to divine what objective or objectives the defendant might have had in possessing the firearm, we find it better to rely on section 654's actual language in resolving this single-act case. . . . Accordingly, we conclude this case should be decided on the basis that it involves a single act or omission that can be punished but once.  [¶]  It might make sense to punish more severely a firearm possession that violates multiple penal provisions than a firearm possession that violates only one penal provision.  Any time it wishes, the Legislature can change the law and permit multiple punishment in a situation like this.  But we must interpret the statutes as they exist.  Because defendant's convictions were based on a single act, section 654 prohibits multiple punishment." (*Jones*, *supra*, 54 Cal.4th 350, 360.)

As the People point out, this case differs from *Jones* in that the separate sentences for the firearm possession in this case were not imposed for convictions of separate substantive offenses.  Instead, the issue in this case is whether the enhancements imposed on another offense (i.e., to enhance the sentence for defendant's narcotics-related convictions) must be stayed due to the sentence imposed for defendant's conviction of being a felon in possession of a firearm.

The California Supreme Court addressed the application of section 654 to sentence enhancements in *People v. Ahmed* (2011) 53 Cal.4th 156 (*Ahmed*).  As this court has previously explained, "The *Ahmed* court concluded that section 654 may apply to sentence enhancements arising from the circumstances of the crime and not imposed based on the status of the offender.  (*Ahmed*, at p. 161.)  As our Supreme Court noted, sometimes separate enhancements apply to different aspects of the *same* substantive offense.  (*Id*. at p. 163.)  Nonetheless, the high court noted that considerations of whether section 654 requires an enhancement to be stayed will generally be unnecessary because

19

the sentence enhancement statutes themselves will more often indicate whether multiple punishments may be imposed.  Thus, '[o]nly if the specific statutes do not provide the answer should the court turn to section 654.'  (*Ahmed*, at pp. 159-160.)"  (*People v. Wooten* (2013) 214 Cal.App.4th 121, 129.)

Here, defendant's sentence enhancements were imposed under section 12022, subdivision (c).  Subdivision (c) of section 12022 provides:  "Notwithstanding the enhancement set forth in subdivision (a),[3] a person who is personally armed with a firearm in the commission of a violation or attempted violation of Section 11351, 11351.5, 11352, 11366.5, 11366.6, 11378, 11378.5, 11379, 11379.5, or 11379.6 of the Health and Safety Code shall be punished by an additional and consecutive term of imprisonment pursuant to subdivision (h) of Section 1170 for three, four, or five years."

The language of section 12022, subdivision (c), does not address whether the firearm enhancement for one of the enumerated narcotics offenses must be stayed if defendant also has a separate conviction for a firearm offense.  Consequently, under *Ahmed, supra*, 53 Cal.4th 156, we proceed to consider whether section 654 applies.

*Ahmed* involved multiple enhancements imposed for the same crime and yielded the holding that "when applied to multiple enhancements *for a single crime*, section 654 bars multiple punishment for the same aspect of a criminal act."  (*Ahmed*, *supra*, 53

---

**3**      Subdivision (a)(1) of section 12022 provides:  "Except as provided in subdivisions (c) and (d), a person who is armed with a firearm in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment pursuant to subdivision (h) of Section 1170 for one year, unless the arming is an element of that offense.  This additional term shall apply to a person who is a principal in the commission of a felony or attempted felony if one or more of the principals is armed with a firearm, whether or not the person is personally armed with a firearm."

Cal.4th at p. 160, italics added.)  Nonetheless, the California Supreme Court's decision proves instructive where it explained:

"When [section 654] was enacted in 1872, sentence enhancements as we know them today did not exist.  But on its face, its language applies to enhancements. Enhancements are 'provisions of law' under which an 'act or omission' is 'punishable.' Accordingly, as a default, section 654 does apply to enhancements when the specific statutes do not provide the answer.  [¶]  But enhancements are different from substantive crimes, a difference that affects *how* section 654 applies to enhancements.  Provisions describing substantive crimes, such as the assault with a firearm of this case, generally define criminal *acts*.  But enhancement provisions do not define criminal acts; rather, they increase the punishment for those acts.  They focus on *aspects* of the criminal act that are not always present and that warrant additional punishment."  (*Ahmed*, *supra*, 53 Cal.4th at p. 163.)

Section 654 applies when the aspect of a sentence enhancement punishes the exact criminal conduct for which a defendant has been separately convicted and sentenced. (*People v. Wynn* (2010) 184 Cal.App.4th 1210, 1218–1221 (*Wynn*); *People v. Calles* (2012) 209 Cal.App.4th 1200, 1217, 1220, 1225 (*Calles*); *People v. Douglas* (1995) 39 Cal.App.4th 1385, 1392–1396 (*Douglas*).)

The defendant in *Wynn* was convicted of, among other things, assault with a deadly weapon and was subject to a sentence enhancement for the same use of a deadly weapon that attached to his conviction for burglary.  (184 Cal.App.4th at p. 1218.)  The *Wynn* court held section 654 applied.  In so holding, *Wynn* noted the California Supreme Court has previously "found significance in the fact that section 654 uses the terminology 'act or omission' [citation] and thus 'prohibits multiple punishment per act 'in contrast to section 12022.53 which 'do[es] so per crime.' " (*Wynn*, at p. 1220, quoting (*People v.*

21

*Palacios* (2007) 41 Cal.4th 720, 731.) Thus, the *Wynn* court concluded, "the enhancement under section 12022, subdivision (b)(1) for personally using a deadly or dangerous weapon during the commission of the burglary is based on an *act or omission* performed by Wynn during the [burglary] offense, namely, using the nunchaku." (*Wynn*, at p. 1220.)

In *Calles*, *supra*, 209 Cal.App.4th 1200, the appellate court held section 654 applied to bar imposition of both a prison term for leaving the scene of an accident and a sentence enhancement for leaving the scene of the same accident that attached to a gross vehicular manslaughter conviction. (*Id.* at pp. 1215-1217.) As the *Calles* court explained, section 654 applies because "[t]here was only one act of leaving the scene of an accident." (*Ibid.*)

The same reasoning was employed in *Douglas*, *supra*, 39 Cal.App.4th 1385. *Douglas* involved sentences for kidnapping for purposes of robbery, a kidnapping enhancement for forcible oral copulation, and a kidnapping enhancement for rape -- all arising out of the same kidnapping. (*Id.* at p. 1392.) The *People* conceded one of the sentences for the kidnapping enhancement had to be stayed under section 654 but argued the second kidnapping enhancement was proper because the defendant in that case formed a subsequent intent to commit sexual assault after the kidnapping began. (*Ibid.*) The *Douglas* court disagreed and explained that "[t]here was only one kidnapping; the kidnapping for robbery was the same as the kidnapping which gave rise to the two enhancements." (*Id.* at pp. 1395-1396.) Consequently, "the trial court had no grounds to punish defendant again for the identical kidnapping. Although the kidnapping was committed with the independent and additional intent to commit sexual offenses, defendant was sentenced separately for each of those sexual offenses, which accounted

for his culpability for those offenses. No additional punishment was warranted." (*Id.* at pp. 1394-1395.)

Here, defendant was convicted of section 29800, subdivision (a)(1), based on the.38-caliber handgun found on the floor of the minivan he was driving when he was pulled over by the police. The four arming enhancements imposed under section 12022, subdivision (c), pertained to the same possession of the firearm on the same occasion. To paraphrase *Calles* and *Douglas*: there was only one gun lying on the floor of the van. (*Calles*, *supra*, 209 Cal.App.4th at p. 1217; *Douglas*, *supra*, 39 Cal.App.4th. at p. 1395.) The criminal act for which defendant was convicted and the aspect of the enhancements attached to his sentence were identical, and therefore section 654 applies.

The People contend separate sentences are warranted because "there was substantial evidence to support the trial court's implied finding that [defendant's] possession of the firearm was antecedent to and separate from the primary offenses of transporting methamphetamine." We disagree. At trial, the People's case focused exclusively on proving defendant's possession of the firearm, controlled substances, and drug paraphernalia at the time of defendant's arrest. The People's evidence did not even address the possibility defendant possessed the firearm before the controlled substances. Although the People note defendant testified "he was in the hotel prior to getting into his vehicle and driving," this does not provide adequate support for an inference defendant possessed the gun separately from the controlled substances.

We also reject the People's contention defendant had differing objectives for the singular possession of the firearm. Under the California Supreme Court's reasoning in *Jones*, the possibility that multiple objectives can be inferred for a single instance of possessing a firearm does not allow for multiple punishments. (*Jones*, *supra*, 54 Cal.4th 350, 360.) Here, section 654 applies to the arming enhancements that attach to the

same conduct as formed the basis for his conviction of being a felon in possession of a firearm.

The sentence for being a felon in possession of a firearm carries a potential term of three years in prison. (§§ 18, 29800, subd. (a)(1).) The longest potential term for the enhancement for being armed in the commission of a narcotics offense enumerated in section 12022, subdivision (c), is five years. Thus, the sentence for the armed commission of a narcotics crime enhancement is greater than the sentence for the being a felon in possession of a firearm offense. On remand, the trial court shall maintain the sentence enhancement of section 12022, subdivision (c), for one of the unstayed counts of defendant's narcotics-related convictions. (E.g., *Calles*, *supra*, 209 Cal.App.4th at pp. 1217-1218.)[4]

## DISPOSITION

Defendant's convictions are affirmed. The matter is remanded to the trial court for resentencing consistent with Penal Code section 654 and this opinion in order to stay either the sentence for defendant's conviction of possession of heroin for sale or transportation of heroin for sale. The trial court shall also stay the sentence either for defendant's conviction of possession of methamphetamine for sale or transportation of methamphetamine for sale. The trial court shall stay the sentence enhancements under Penal Code section 12022, subdivision (c), for all but one of the unstayed counts of defendant's narcotics-related convictions as well as the sentence for being a felon in possession of a firearm.

---

[4] Our conclusion defendant may be subject to only one sentence enhancement for use of the firearm in the commission of his narcotics offenses obviates the need to address whether the stays of some of his narcotics-related sentences (as explained in part IV B., *ante*) also require stays of attached firearm enhancements.

24

The clerk of the superior court is then directed to prepare a new abstract of judgment reflecting the changes in sentence and to forward a certified copy to the Department of Corrections and Rehabilitation.

/s/
HOCH, J.

We concur:

/s/
RAYE, P. J.

/s/
NICHOLSON, J.