Filed 8/31/20  P. v. Shareef CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ABDUR SHAREEF et al.,<br><br>    Defendants and Appellants. | B297530<br><br>(Los Angeles County<br>Super. Ct. No. TA144051) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kelvin D. Filer, Judge.  Affirmed as modified with directions.

William G. Holzer, under appointment by the Court of Appeal, for Defendant and Appellant Abdur Shareef.

Maggie Shrout, under appointment by the Court of Appeal, for Defendant and Appellant Safari Williams.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael R. Johnsen and Kristen J. Inberg, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant Abdur Shareef of one count of robbery (Pen. Code,[1] § 211) with gang and firearm enhancements (§§ 186.22, subd. (b)(1), 12022.53, subd. (b)). The same jury convicted defendant Safari Williams of two counts of robbery (§ 211) with gang and firearm enhancements (§§ 186.22, subd. (b)(1), 12022.53, subd. (b)), and one count of possession of a firearm by a felon (§ 29800, subd. (a)(1)). In a bifurcated proceeding the court found true certain recidivist allegations as to each defendant, including that Williams had served a prior prison term for purposes of section 667.5, subdivision (b).

The trial court sentenced Shareef to 25 years in state prison, and Williams to prison for 76 years to life, including one year for the prison prior enhancement.

Shareef and Williams contend that insufficient evidence supports the gang enhancements. Shareef also claims his sentence violates the proscription against multiple punishments under section 654 because the robbery conviction and the gang enhancement both relied on his use of a firearm.

Williams raises three additional claims on appeal: (1) The trial court abused its discretion when it denied her motion for new counsel pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*); (2) The prosecution's gang expert improperly opined on the meaning of Williams's gang parlance during jailhouse calls with Shareef; and (3) Because of a post-conviction amendment to section 667.5, subdivision (b), the one-year prison prior should be stricken from her sentence.

We agree with Williams that she is entitled to the benefit of the amendment to section 667.5, subdivision (b), and therefore

---

[1] Unless otherwise specified, subsequent statutory references are to the Penal Code.

will strike one year from her sentence.  In all other respects, we affirm the judgments.

## FACTS AND PROCEDURAL SUMMARY

### A.   *Background*

According to police officer and gang expert Alex Zamora, Shareef is a member of the Hoover Criminals (the Hoovers) gang. Hoovers is composed of nine "sets" tied to the Los Angeles streets they control, including 74th Street, 92nd Street, and 94th Street. Williams is either a member of the 92nd set or 94th set or, at the time she committed her robberies, was working to become a member of those sets.

Members of the Hoovers commit crimes, including drug sales, pimping, robberies, and murder, and generate revenue by selling narcotics and reselling stolen items.  But, Officer Zamora stated, gang members can also commit crimes for their own personal interest without benefiting the gang.

On August 6, 2017, Williams was in jail and awaiting release the next day.  She spoke with Shareef and a third person by phone.  They discussed another person who was using the gang moniker, "[L.K.]"[2]  Williams, however, claimed the moniker "[L.K.]" belonged to her, dating back to when she was part of the Hoovers's 74th set.  She told Shareef, "I am Killer Skirt herself." According to Officer Zamora, "skirt" is a derogatory term used to refer to members of a rival gang.

Williams told Shareef she was going to "holler," which meant she would instigate a confrontation with the other person using the L.K. moniker.  In order to earn the right to use the name,

---

[2] We refer to the moniker as "L.K." in order to protect the identity of the person discussed during that phone conversation.

3

Officer Zamora opined that Williams needed "go out in the street and commit some kind of crime, work, on behalf of the gang to basically earn a spot in the gang, get that name passed on to [her]."

Williams concluded the call by saying, "watch what I'm about to do. I'm about to . . . show them really how to gangbang on the dead homie. I want a cold nine deuce and a nine four put on. I want some nine deuce bitches to put me on and I want some 94 bitches. On Hoover. It's just like that. On Hoover. Just based on the fact, I'm from every groove line."

Officer Zamora opined that "put on" meant committing crimes in order to become part of the Hoovers's 92nd and 94th sets. He further opined that "every groove line" referred to the Hoovers's origins as the "Hoover Groovers" and that Williams was asserting a connection to every set of the gang. Officer Zamora interpreted Williams's comments to mean she intended to prove she deserved the Lady KS moniker.

### B.     *The August 11, 2017 Robbery of S.C.*

S.C. knew Williams from prior encounters. On August 11, 2017, four days after her release from jail, Williams asked S.C. to meet her at 92nd Street and Broadway. S.C. drove to the location and saw Williams waiting in a truck with others. Williams exited the truck and walked toward 92nd Street, then returned to the truck. Two men, including Shareef, got out of the truck and approached S.C.'s car. The men were both carrying guns.

Shareef told S.C., "Give me your things. I should shoot you." Shareef hit S.C. with a gun. Williams, Shareef, and the second man took the victim's watch, earrings, wallet, money, credit cards, birth certificate, and keys to a storage unit and cars. They then jumped in the truck and drove away. At some point after the

4

robbery, someone broke into S.C.'s storage unit. Someone also attempted to use his personal information to get a cell phone and a home mortgage.

### C. *The August 14, 2017 Robbery of M.S.*

On August 14, 2017, M.S. went to a Money Mart on Vermont Avenue to pick up a money order. After he left the store, he got into a car. A woman opened the car door and asked why he was staring at her "homie." M.S. replied that he was not staring. The woman and the man that was with her then robbed him, taking his money and jewelry. M.S. attempted to put the car in reverse, but the man struck him in the face.

At trial, M.S. identified Shareef as the male who robbed him. Video of the incident showing the female robber was displayed to the jury. On appeal, Williams does not dispute the finding that she was the female robber.

### D. *Jailhouse Phone Calls*

Police arrested Shareef on August 21, 2017. While in custody, he had numerous telephone conversations with Williams, which were recorded. Shareef and Williams repeatedly referred to the Hoovers and used gang terminology, such as "on the dead homies" and "on the set." Officer Zamora explained that "on the dead homies" refers to gang members who were murdered, and "on the set" refers to the Hoovers.

### E. *Gang Opinion Testimony*

Officer Zamora testified generally about gang culture and specifically about the Hoovers, explaining gang territory, tattoos, and symbols. He testified that gang members operate by instilling fear in the community and that members commit crimes in order to gain respect within the gang. In response to a hypothetical

question mirroring the facts in the case, he opined that the robberies were committed in association with, and to benefit, the Hoovers.

## F.    *The Convictions*

The jury convicted Shareef of the robbery of S.C. and acquitted him of the charge of robbery against M.S.  The jury convicted Williams of the robberies against S.C. and M.S.[3]  The jury found that Shareef and Williams committed their robberies for the benefit of, at the direction of, or in association with a criminal street gang and with the specific intent to assist, further, or promote criminal conduct by gang members.  The jury also convicted Williams of being a felon in possession of a firearm. (§ 29800, subd. (a)(1)).

## DISCUSSION

### A.    *Officer Zamora's Testimony Regarding the Meaning of Williams's Gang Parlance*

Prior to his testimony, and over an objection by the prosecution that Officer Zamora could not express an opinion as to the ultimate facts at issue, the trial court ruled that the officer could give his opinion as to the meaning of "phrases that qualify as gang parlance or gang phrases" based on his "training [and] experience."  Williams argues that Officer Zamora's explanation of certain phrases Williams used during her August 6, 2017 telephone conversation constituted improper expert opinion.

---

[3] In addition to the robberies of S.C. and M.S., the People charged Shareef and Williams each with two additional robberies that allegedly took place on August 21, 2017.  The jury, however, could not reach a verdict on these counts and the court declared a mistrial as to them and ultimately dismissed them.

6

In particular, Officer Zamora was asked about Williams's statement during the jailhouse call that she wanted "a cold nine deuce and a nine four put on." The officer stated, "I believe that she's referring to herself basically putting in work and representing nine[-]two and nine[-]four Hoover once she's put on the gang." To "put on," Officer Zamora explained, meant "[b]asically going out committing street crimes." The prosecutor asked the officer if it was "[l]ike an audition," and he responded, "Yes. But the crimes are committed usually on behalf of the gang." The prosecutor also asked about Williams's statement, " 'I'm about to show them really how to gang bang. . . . I want some nine deuce bitches to put me on and I want some nine four bitches.' " Officer Zamora explained that "she wants her spot in the gang and she basically wants nine[-]two, nine[-]four females from the Hoover Criminals to put her on the gang." Williams did not object to any of the specific questions or answers she challenges on appeal.

A person with "special knowledge, skill, experience, training, or education" in a particular field is permitted to qualify as an expert witness (Evid. Code, § 720, subd. (b)), and to give testimony in the form of an opinion (Evid. Code, § 801). Courts "have long permitted a qualified expert to testify about criminal street gangs when the testimony is relevant to the case" and " 'the subject matter of the testimony is "sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." ' " (*People v. Gonzalez* (2006) 38 Cal.4th 932, 944.) A trial court has "broad discretion in deciding whether to admit or exclude expert testimony" and whether the testimony is admissible is reviewed for abuse of discretion. (*People v. McDowell* (2012) 54 Cal.4th 395, 426.)

The People contend that Williams has forfeited her arguments because she failed to object to the specific testimony she challenges on appeal. Even if we assume that Williams had preserved these arguments for appeal, the court did not abuse its discretion in allowing the challenged testimony. Officer Zamora's testimony constituted his opinion regarding the general meaning of "put on" in gang culture and its more specific meaning in the context of Williams's references to "nine[-]deuce" and "nine[-]four." The court could reasonably have determined that Williams's phrases were beyond the jurors' common experience and that expert opinion on the subject would assist them. (See *People v. Prince* (2007) 40 Cal.4th 1179, 1222 ["the pertinent question is whether, even if jurors have some knowledge of the subject matter, expert opinion testimony would assist the jury"].) Contrary to Williams's arguments, Officer Zamora did not testify that Williams intended to commit crimes for the benefit of the Hoovers or otherwise opine as to ultimate issues of fact.

### B. *Substantial Evidence Supports the Gang Enhancements*

#### 1. *Standard of review and relevant law*

The elements of a gang enhancement under section 186.22, subdivision (b) are: (1) The crime was committed for the benefit of, at the direction of, or in association with a criminal street gang; and (2) The defendant committed a felony with the specific intent to promote, further, or assist any criminal conduct by gang members. (*People v. Loeun* (1997) 17 Cal.4th 1, 11.) The evidence must establish both prongs. (*People v. Rios* (2013) 222 Cal.App.4th 542, 561.) Shareef challenges the sufficiency of the evidence as to the first prong—that the crime was committed for the benefit of, at the direction of, or in association with a criminal street gang.

8

Williams challenges the sufficiency of the evidence as to both prongs.

We review a challenge to the sufficiency of the evidence to support the gang enhancement finding for substantial evidence. (*People v. Tully* (2012) 54 Cal.4th 952, 1006.)  Substantial evidence is " ' "evidence that is reasonable, credible, and of solid value— such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." ' " (*Ibid.*)  We presume the existence of every fact supporting the judgment that the jury could reasonably have deduced from the evidence and make all reasonable inferences that support the judgment.  (*People v. Barnes* (1986) 42 Cal.3d 284, 303; *People v. Catlin* (2001) 26 Cal.4th 81, 139.)

### 2. *The evidence was sufficient to support the gang enhancement against Shareef on count 1 (robbery of S.C.)*

Shareef does not dispute there was "a good deal of evidence to prove" the second prong of the enhancement—i.e., that he "intended to assist, further, or promote criminal conduct by gang members."  He contends, however, that the prosecution failed to prove the first prong, that the robbery of S.C. was committed for the benefit of, at the direction of, or in association with a criminal street gang.  Specifically, Shareef argues S.C. was a fellow "Hoovers gang member or at least a close associate" of the Hoovers and, accordingly, the robbery logically could not have "benefited" their shared gang.  We reject the argument.

The gang enhancement "requires proof that the defendant commit a gang-related crime in the first prong—i.e., that the defendant be convicted of a felony committed for the benefit of, at the direction of, or in association with a criminal street gang." (*People v. Albillar* (2010) 51 Cal.4th 47, 67.)  " 'Expert opinion

9

that particular criminal conduct benefited a gang' . . . can be sufficient to support . . . [a] gang enhancement." (*People v. Vang* (2011) 52 Cal.4th 1038, 1048.)

Here, Officer Zamora opined that gang members, under hypothetical facts mirroring the facts in this case, would have committed such crimes for the benefit of the gang. The officer's opinion is supported by the evidence of Williams's jailhouse call with Shareef on August 6, 2017—a mere five days before the robbery of S.C. and eight days before the robbery of M.S. During that call, Williams told Shareef she was "about to show them really how to gangbang" and "want[ed] some nine deuce bitches to put me on and I want some 94 bitches." Officer Zamora explained that Williams was referring to committing crimes in order to become part of the Hoovers's 92 and 94 sets. From the proximity of the discussion between Shareef and Williams regarding Williams's intent to commit crimes to be "put on" with the Hoovers and the commission of the first robbery, the jury could have reasonably found Shareef intended the robberies to benefit the Hoovers by the addition of a new member to its ranks.

Shareef asserts there is insufficient evidence that the crime benefited the Hoovers because S.C. was either a member or an associate of the same gang. Even if we accept Shareef's unsupported premise that a crime committed against a member or associate of the defendant's gang precludes a finding that the crime benefited the gang, the evidence did not establish that S.C. was a member or associate of Shareef's gang. Shareef points to jailhouse calls from Shareef to Williams where Shareef referred to S.C. as being "from the 50s"—a Hoovers's set. Neither this reference nor other evidence, however, proved that S.C. was a Hoovers member or associate. Officer Zamora opined that Shareef

10

was referring not to the Hoovers's 50's sets, but to someone who is "from that area"—i.e., certain streets between 50th and 59th streets—that the Hoovers control. This opinion is supported by S.C.'s testimony. He stated that he grew up with a friend who "stays in the fifties." The prosecutor asked him, "When you say stay in the fifties, you mean the streets numbered with the fifties?" S.C. replied, pointing to a map, "Yeah. That area right there." There was, therefore, evidence from which the jury could have reasonably concluded that S.C. lived in the "50's," but was not a member or associate of the Hoovers. Because the jury could find that S.C. was not a Hoovers member or associate, Shareef's argument that he could not commit a robbery for the benefit of his gang by robbing his own gang's member or associate fails.

> **3.    Substantial evidence supports the gang enhancement finding against Williams on count 5 (robbery of S.C.) and count 6 (robbery of M.S.)**

Williams asserts that the evidence was insufficient to establish either prong of the gang enhancement. We disagree.

Under the first prong, the prosecution must establish that Williams committed her robberies for the benefit of, at the direction of, or in association with a criminal street gang. (*People v. Loeun, supra*, 17 Cal.4th at p. 11.) Here, there was evidence that Williams committed her robberies with Shareef, an admitted Hoovers gang member. This is sufficient to support a finding that she committed her crimes in association with a criminal street gang. (*People v. Leon* (2008) 161 Cal.App.4th 149, 162 [because it is worded in the disjunctive, the first prong of the gang enhancement may be satisfied without evidence of any benefit to the gang so long as the crime was committed in association with or at the direction of another gang member].)

Williams challenges the jury's finding, asserting there was no "independent evidence" to support Officer Zamora's opinion that she was acting for the benefit of the gang, particularly where "there was no Hoover[s] gang paraphernalia left at the scene, no tagging of gang signs or other indications that this was a gang related incident. . . . No one was wearing gang colors or gang symbols, no gang signs were shown, and neither [S.C.] nor [M.S.] were members of a rival gang." Although such indicia will support a gang enhancement (see, e.g., *People v. Ramirez* (2016) 244 Cal.App.4th 800, 819), they are not required. Thus, even absent that Williams committed the robberies with a known gang member, Officer Zamora's opinion, which was supported by Williams's jailhouse call statements, is sufficient to support the first prong of the enhancement.

*People v. Ochoa* (2009) 179 Cal.App.4th 650 (*Ochoa*) does not compel a different result. In *Ochoa*, a single defendant acted alone in committing a carjacking. The gang enhancement was based solely upon a gang expert's opinion that the carjacking was of " 'obvious benefit . . . to the gang' " because it was a popular gang crime. (*Id.* at p. 656.) The Court of Appeal reversed the enhancement, holding that the gang finding was unsupported because the "[d]efendant did not call out a gang name, display gang signs, wear gang clothing, or engage in gang graffiti while committing" the offense. (*Ibid.*) Unlike *Ochoa*, Williams associated with Shareef, a known gang member, in robbing S.C.

The second prong requires proof Williams had the specific intent to promote, further, or assist in any criminal conduct by gang members. (*People v. Albillar*, *supra*, 51 Cal.4th at p. 60.) "[I]f substantial evidence establishes that the defendant intended to and did commit the charged felony with [a] known member[ ] of a gang, the jury may fairly infer that the defendant had the

12

specific intent to promote, further, or assist criminal conduct by th[at] gang member[ ]." (*Id*. at p. 68.) Here, there was ample evidence that Williams intended to rob S.C. and M.S., that she assisted Shareef in committing the robberies, and that Shareef was an established member of the Hoovers criminal street gang.[4] Accordingly, there was substantial evidence that Williams acted with the specific intent to promote, further, or assist gang members in that criminal conduct.

### C. *Shareef's Sentence Does Not Violate Section 654*

In accord with the gang enhancement finding, the court imposed on Shareef a 10-year sentence under section 186.22, subdivision (b)(1)(C). That subdivision authorizes the enhancement if the underlying felony "is a violent felony, as defined in subdivision (c) of Section 667.5." Here, the underlying felony of which Shareef was convicted is robbery, which is included within the pertinent definition of a violent felony. (§ 667.5, subd. (c)(9).) Shareef argues the trial court erred in failing to stay the 10-year enhancement under section 654. We reject the argument.

---

[4] There is some ambiguity in the evidence regarding Williams's actual status at the time of the robberies. Williams claimed to be a member of the Hoovers's 74 set, but was looking to be initiated into either (or both) the 92 and 94 sets. That ambiguity does not change the result. Under California law, the section 186.22, subdivision (b) gang enhancement "does not require that the defendant be an active or current member of the criminal street gang that benefits from [the] crime." (*People v. Bragg* (2008) 161 Cal.App.4th 1385, 1402; *In re Ramon T.* (1997) 57 Cal.App.4th 201, 206–207.)

13

Under section 654, "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).)

The purpose underlying section 654 "is to ensure that a defendant's punishment will be commensurate with his culpability." (*People v. Correa* (2012) 54 Cal.4th 331, 341.) To that end, the statute prohibits courts from imposing multiple punishments for the same act or omission. (*People v. Corpening* (2016) 2 Cal.5th 307, 312.)

On appeal, "[a] trial court's express or implied determination that two crimes were separate . . . must be upheld . . . if supported by substantial evidence" (*People v. Brents* (2012) 53 Cal.4th 599, 618); that is, evidence which is reasonable, credible, and of solid value (*People v. Armstrong* (2016) 1 Cal.5th 432, 450).

According to Shareef, both his robbery and the gang enhancement "depended on the same use of the firearm," thereby precluding the imposition of multiple punishments under section 654. Shareef is incorrect. Although Shareef actually used a gun in his commission of his robbery of S.C., neither the robbery nor the gang enhancement required or depended upon his use of firearm. (§ 667.5, subd. (c)(9) ["violent felony" includes "[a]ny robbery"]; § 211 [robbery "is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear"].) Section 654 has no application here.

Shareef relies on *People v. Buchanan* (2016) 248 Cal.App.4th 603 (*Buchanan*), in which the Court of Appeal directed that an enhancement for being "personally armed with a firearm" (§ 12022) must be stayed under section 654 when the defendant

14

was also convicted and sentenced for being a felon in possession of the same firearm. (*Buchanan, supra*, 248 Cal.App.4th at pp. 617–618.) There was, the court explained, "only one gun" and the "criminal act for which defendant was convicted and the aspect of the enhancements attached to his sentence were identical." (*Id.* at p. 617.)

In reaching its decision, the *Buchanan* court noted that " 'considerations of whether section 654 requires an enhancement to be stayed will generally be unnecessary because the sentence enhancement statutes themselves will more often indicate whether multiple punishments may be imposed. Thus, "[o]nly if the specific statutes do not provide the answer should the court turn to section 654." ' " (*Buchanan, supra*, 248 Cal.App.4th at p. 615.)

In *Buchanan*, the applicable statutes were silent on the question of multiple punishments. (*Buchanan, supra*, 248 Cal.App.4th at p. 615.) That is not the case here. Section 186.22, subdivision (b)(1)(C) expressly provides that, "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall, upon conviction of that felony, *in addition and consecutive to the punishment prescribed for the felony* or attempted felony of which he or she has been convicted, be punished as follows: [¶] . . . [¶] . . . If the felony is a violent felony, as defined in subdivision (c) of Section 667.5, the person shall be punished by an additional term of 10 years." (Italics added.)

Because sections 211, 667.5, subdivision (c)(9), and 186.22, subdivision (b)(1)(C), when read together, specifically prescribe multiple punishments for robbery committed for the benefit

of, at the direction of, or in association with any criminal street gang, section 654 does not preclude the additional punishment. (*Buchanan*, *supra*, 248 Cal.App.4th at p. 615.)

### D. *The Court Did Not Err in Denying Williams's Marsden Motion*

Under *Marsden, supra*, 2 Cal.3d 118, if a defendant seeks to discharge appointed counsel and substitute with another, " ' "the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of the attorney's inadequate performance." ' " (*People v. Memro* (1995) 11 Cal.4th 786, 857.) Once a defendant is afforded an opportunity to state his or her reasons for seeking to discharge an appointed attorney, the decision whether or not to grant the motion for substitution of counsel lies within the discretion of the trial judge. (*Ibid.*)

The court does not abuse its discretion in denying a *Marsden* motion " 'unless the defendant has shown that a failure to replace counsel would substantially impair the defendant's right to assistance of counsel.' " (*People v. Taylor* (2010) 48 Cal.4th 574, 599.) Substantial impairment of the right to counsel can occur when the " ' "appointed attorney is not providing adequate representation . . . or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result." ' " (*People v. Memro*, *supra*, 11 Cal.4th at p. 857.)

Here, after Williams raised a concern to the trial court about her attorney, the court asked the prosecution to leave the courtroom and conducted a *Marsden* hearing. Williams explained that her mother overheard counsel in another courtroom referring to Williams as "delusional and crazy." She told the court she thought her conversations with her attorney were meant to be confidential. Counsel was not aware that Williams's mother

16

was present until another attorney in the courtroom suggested he should stop discussing the case.

The court asked Williams if she had a specific complaint about something her attorney did or did not do. She stated she felt he was not acting in her best interests after she learned he was "talking bad about [her], calling [her] delusional, crazy to . . . attorneys in another department." She also complained counsel did not communicate with her about her case or talk to her outside of the courtroom.

In response, Williams's counsel admitted he had talked about the case in another department, but stated he did not share any confidential information. Counsel stated he believed the avenues of communication with Williams had not broken down and he could still represent her.

On appeal, Williams asserts she "cannot begin to demonstrate all the ways her defense could have been different if she had been able to effectively communicate with counsel that she trusted." Although we question the propriety of counsel's conduct and acknowledge that Williams was understandably offended by her attorney's statements to others that she was "delusional" and "crazy," she failed to explain how "her defense could have been different." Her complaints indicate a general lack of trust between her and counsel. A lack of trust in counsel, however, does not amount to a conflict sufficient to justify granting a *Marsden* motion. (*People v. Memro, supra*, 11 Cal.4th at pp. 858–859; see also *People v. Jackson* (2009) 45 Cal.4th 662, 688 [" ' "[I]f a defendant's claimed lack of trust in, or inability to get along with, an appointed attorney were sufficient to compel appointment of substitute counsel, defendants effectively would have a veto power over any appointment." ' "].) The court did not abuse its discretion in denying Williams's *Marsden* motion.

### E.  *Senate Bill No. 136 Requires That Williams's Prior Prison Term Enhancement Be Stricken*

Williams's sentence includes a one-year enhancement under section 667.5, subdivision (b), for having served a prior prison term for a felony conviction.  At the time of Williams's sentencing in April 2019, the enhancement was proper.  In 2019, however, the Legislature enacted Senate Bill No. 136, which amended section 667.5, subdivision (b), such that it applies only where the prior prison term was served "for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code."  (§ 667.5, subd. (b); Stats. 2019, ch. 590, § 1, p. 5235.)  The amendment went into effect on January 1, 2020. (See Cal. Const., art. IV, § 8, subd. (c), par. (1).)

Because the judgment in the current case is not yet final, Williams is entitled to the benefit of the amendment.  (*People v. Winn* (2020) 44 Cal.App.5th 859, 872–873 [Senate Bill No. 136 applies to nonfinal judgments on appeal]; *People v. Lopez* (2019) 42 Cal.App.5th 337, 341 [same]; *In re Estrada* (1965) 63 Cal.2d 740, 744–746 [absent evidence to the contrary, we presume the Legislature intended amendments to statutes that reduce the punishment for a particular crime to apply to all defendants whose judgments are not yet final on the amendments' operative date].)

Williams's prior prison term enhancement was based on prison terms for convictions for first degree burglary and attempted first degree burglary.  Because those crimes are not enumerated sexually violent offenses (Welf. & Inst. Code, § 6600, subd. (b)), section 667.5, subdivision (b), as amended, does not apply to her.

Remand for a new sentencing hearing is unnecessary because the trial court has already exercised its discretion to impose the maximum sentence.  (*People v. Buycks* (2018) 5 Cal.5th

857, 896, fn. 15; *People v. Lopez, supra*, 42 Cal.App.5th at p. 342 ["Because the trial court imposed the maximum possible sentence, there is no need for the court to again exercise its sentencing discretion."].)  Therefore, we modify the judgment by striking the one-year enhancement and direct the trial court to prepare an amended abstract of judgment.  (*People v. Lopez, supra*, at pp. 342–343.)

## DISPOSITION

The one-year prior prison term enhancement imposed under section 667.5, subdivision (b) in Williams's case is stricken.  As modified, the judgment against Williams is affirmed.  The trial court is directed to prepare an amended abstract of judgment in Williams's case and to send a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.

The judgment in Shareef's case is affirmed.

NOT TO BE PUBLISHED.


ROTHSCHILD, P. J.

We concur:


CHANEY, J.


SINANIAN, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

19